# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

TERI LYNN GREEN,

     Plaintiff,

v.                            CASE NO. 8:19-cv-2021-T-TGW

ANDREW M. SAUL,
Commissioner of Social Security,

     Defendant.

_____

## O R D E R

The plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1]   Because the decision of the Commissioner of Social Security is supported by substantial evidence, and the plaintiff does not identify reversible error, the decision will be affirmed.

## I.

The plaintiff, who was fifty-two years old at the time of the administrative hearing and who has a high school education, has worked as a school cafeteria head cook and a waitress (Tr. 45, 170).  She filed a claim for Social Security disability benefits, alleging that she became disabled on

_____

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 13).

February 29, 2016, due to severe pain from a broken femur and other bones, cyclic vomiting syndrome, and migraine headaches (Tr. 49). The plaintiff's claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "status post broken femur, bursitis, lumbar spondylosis, gastroparesis, cyclic vomiting syndrome (CVS) and migraines, anxiety, and depression" (Tr. 17). The law judge determined, with those impairments, the plaintiff has the residual functional capacity (Tr. 20):

> to perform light work as defined in 20 CFR 404.1567(b) except: occasional for all postural limitations, including climbing ladders, ropes or scaffolds, climbing ramps and stairs, balancing, stooping, crouching, kneeling and crawling. [Sh]e is limited to unskilled work (SVP 1 or 2) and simple, routine, repetitive tasks.

The law judge concluded that, with this residual functional capacity, the plaintiff could not perform any past relevant work (Tr. 23). However, based on the testimony of a vocational expert, the law judge determined that the plaintiff's residual functional capacity did not preclude her from performing other work available in significant numbers in the national economy, such as small parts assembler, electronics worker and laundry folder (Tr. 24–25). That determination became the final decision of

2

the Commissioner of Social Security.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on two grounds. She argues that (1) the law judge improperly discounted the opinion of her primary care physician, Dr. Nancy Finnerty and (2) there is "an unresolved inconsistency between the Vocational Expert's testimony

4

and the Dictionary of Occupational Titles" (Doc. 15, pp. 1, 12).

The plaintiff argues first that the law judge "did not offer good cause for giving little weight to Dr. Finnerty's opinions" (id., p. 12). In correspondence dated September 28, 2017, Dr. Finnerty opined that, due to back pain, the plaintiff "is unable to tolerate standing or sitting for any prolonged length of time (greater than 30 min)." Additionally, "she has episodes of the cyclic vomiting syndrome which debilitates her for 2-3 days at a time" (Tr. 467). The plaintiff attributes her back pain and vomiting syndrome to a motor vehicle accident that occurred in 2011, about five years before the alleged disability onset (see Tr. 178, 256).

In April 2018, Dr. Finnerty also completed on the plaintiff's behalf a "check-the-box" Medical Opinion Form (physical) in which she opined, among other limitations, that the plaintiff could stand/walk only one hour of the day, 10 minutes at a time; and only infrequently lift/carry more than 5 pounds and never more than 20 pounds (Tr. 464). Additionally, Dr. Finnerty opined in the Medical Opinion Form that the plaintiff requires bedrest for two hours each workday, and that she would be absent from work six days each month (Tr. 464–66). Thus, Dr. Finnerty essentially opined that the plaintiff was physically disabled from working.[2]

---

[2] Dr. Finnerty also completed a Treating Source Mental Status Report (Tr. 263-

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not giving them such weight. Hargress v. Social Security Administration, Commissioner, 883 F.3d 1302, 1305 (11th Cir. 2018). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Id.

The court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." Hunter v. Social Security Administration, Commissioner, 808 F.3d 818, 823 (11th Cir. 2015).

The law judge summarized Dr. Finnerty's opinions and explained the weight he was affording those opinions (Tr. 22–23):

> [T]he undersigned considered treating source statements provided by the claimant's physician Nancy Finnerty, M.D. (4F, 9F, 10F)....[S]he ... stated that claimant would be unable to sustain a job due to the stress of the job, vomiting syndrome and migraines (4F/5). She further opined that cla[i]mant would be able to stand or walk for 1 hour out of an 8-hour day; occasionally lift or carry one to five pounds; would require bed rest 2 hours during a normal workday; would need to rest for 15 minutes to 20 minutes for every hour of work;

---

67). The plaintiff does not challenge the law judge's consideration of this opinion or the law judge's determination of her mental residual functional capacity.

experience lapses in concentration or memory 1 to 2 hours per day; and be absent 6 days per month. In addition, she stated that claimant required significant doses of pain medication to remain functional and was unable to tolerate standing or sitting for any prolonged period of time; and was unable to work at any job or occupation (9F/1, 10F).

The undersigned accords partial weight to these opinions, as Dr. Finnerty is an acceptable medical source with a treatment relationship with the claimant. Further, Dr. Finnerty's opinion regarding claimant's mental impairments is supported by mostly normal mental status examinations (2F, 3F, 7F, 8F). However, Dr. Finnerty's statements about claimant's functional limitations, particularly that claimant would be unable to sustain a job due to her physical impairments, are not entirely consistent with the findings made herein. The nature and scope of the claimant's treatment has been fully considered in limiting the claimant to light exertion and limited postural maneuvers. The extent of limitation on her daily activities has also been considered herein. However, given that the claimant testified that she can sit for 15 to 20 minutes, perform personal care activities independently, perform household chores, with some breaks, and noted that she experienced relief from pain via various treatment modalities, the undersigned cannot reasonably find that the extent of limitation on h[er] daily activities is so significant as to preclude light exertion work.

The law judge elaborates throughout the decision on the medical evidence that is inconsistent with Dr. Finnerty's extreme opinions of disabling

limitations (<u>see</u> Tr. 21–23).

Initially, the conclusory nature of Dr. Finnerty's opinions is enough, by itself, to justify the law judge to discount them.  <u>See</u> <u>Johns</u> v. <u>Bowen</u>, 821 F.2d 551, 555 (11th Cir. 1987); <u>Burgin</u> v. <u>Commissioner of Social Security</u>, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (The adjudicator "was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations."); <u>see</u> <u>also</u> 20 CFR 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

In fact, Dr. Finnerty does not provide any explanation in the Medical Opinion form for her opinions of extreme functional limitations despite the instructions in the form to "state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion" (Tr. 464).  Dr. Finnerty simply left that portion of the form blank (<u>id</u>.).

Dr. Finnerty's explanation for the opined limitations is especially important here, where the medical basis for them is not apparent

8

from Dr. Finnerty's treatment notes. See Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work ....").

Thus, the law judge reviewed the objective medical evidence, and he could reasonably conclude that the plaintiff's impairments cause some limitations, but do not support Dr. Finnerty's opinions of disabling physical dysfunction. See 20 C.F.R. 404.1529(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work ....").

In this regard, the law judge recounted (Tr. 21):

> [M]usculoskeletal examination of the cervical spine showed tenderness on palpitation and cervical spine pain elicited by motion. The claimant was assessed with cervical radiculopathy .... [T]he claimant began pain management treatment, with the physical examination showing paraspinal muscle spasm diminished range of motion and increased pain with extension and lateral rotation, but no tenderness to palpitation over the bilateral SI joints; range of motion of the spine with normal flexion; and a normal neurological examination (3F/17).

The law judge continued (Tr. 21–22):

> Thereafter, the claimant continued treating primarily for low back pain, with an examination

9

of the lumbar spine showing some tenderness in the lateral posterior wall muscles, but otherwise the lumbosacral spine exhibited normal appearance, no tenderness on palpitation, of the spinous or transverse process (8F/64). The claimant was referred to physical therapy with the initial evaluation showing that claimant was independent in bed mobility, gait with decreased speed cadence secondary to low back pain, but claimant did not modify bathing, dressing and grooming, secondary to such pain. The record indicates that claimant responded well to lumbar extension and manual therapy with a decrease in pain to 2 out of 10 (7F/70-75; 8F/65-70).

Moreover, the law judge detailed (Tr. 22):

On November 21, 2017, the claimant sought emergency treatment following a fall while performing yard work, but on presentation, she denied reports of any hip or low back [pain] (6F/4; 7F/79; 8F/73). In addition, the claimant's physical examination revealed normal range of motion and strength; range of motion of the knee was limited secondary to pain but she exhibited normal range of motion of the right hip and lower extremity; there were no neurological abnormalities and x-rays of the knee were also normal (6F/6).

Thus, the clinical examination findings, which show spinal tenderness, some diminished range of motion, and muscle spasms at times, support the law judge's determination that, while the plaintiff's impairments are substantial, they do not warrant the extreme functional limitations opined by Dr. Finnerty. See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir.

10

2004) (good cause for discounting a treating physician's opinion when extreme functional limitations are inconsistent with the doctor's own medical records); Barclay v. Commissioner of Social Security Administration, 274 Fed. Appx. 738, 740 (11th Cir. 2008) (A lack of supporting medical records may be considered in rejecting the treating physician's opinion.).

Furthermore, the law judge explained that Dr. Finnerty's treatment notes show that the plaintiff's medication regimen has been successful in controlling her symptoms. See Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (It is appropriate to consider the improvement in the claimant's condition with medication.); see also Vesy v. Astrue, 353 Fed. Appx. 219, 223 (11th Cir. 2009) (A treating physician's opinion may be rejected when his treatment notes did not suggest the claimant was as limited as he later opined.).

The law judge elaborated (Tr. 21):

> A review of the medical evidence and the claimant's subjective reports tends to show that the claimant's main issues revolve around her alleged back pain and CVS with migraines. Throughout the remainder of 2016 and into early 2017, the record evidences follow-up appointments with claimant reporting that she responded well to medication, including Amitriptyline therapy for CVS (5F/1; 7F/2). In fact, treatment notes show

11

> that claimant's CV[S] episodes and headaches
> greatly decreased from two to three times per week
> to once a month or so (7F/9; 8F/5).

This conclusion is supported by substantial evidence. See, e.g., Tr. 296 (Medication "allows [the plaintiff] to function throughout the day and complete ADLs" and her "[h]eadaches and intractable vomiting greatly decreased from 2-3 times a week to once a month or so."); Tr. 330 (Medication "controls her pain enough that she can function throughout the day and keep up with activities of daily living."); Tr. 370 ("[C]urrent pain medication [] controls her symptoms and allows her to function.").

The law judge added that the plaintiff's activities of daily living are also inconsistent with Dr. Finnerty's opinions of extreme limitations (Tr. 23, see Tr. 18–19). See 20 C.F.R. 404.1529(c)(3)(i) (law judge is to consider daily activities in determining the extent to which a claimant's symptoms diminish the capacity for basic work activities); Crow v. Commissioner, Social Security Administration, 571 Fed. Appx. 802, 806-07 (11th Cir. 2014) (evidence of the plaintiff's daily activities may be good cause to discount the treating physician's opinion). Substantial evidence supports this finding, as the record shows that the plaintiff has no limitations in personal care; she does household chores such as laundry, cooking and cleaning (with breaks); and she drives and shops in stores (Tr. 19; see Tr. 189, 190). Notably, the

plaintiff sought emergency treatment in September 2017, due to a fall when she was performing yardwork (Tr. 366).

The law judge concluded (Tr. 23):

> In sum, the above residual functional capacity assessment is supported by the medical evidence of record as a whole, showing limited treatment and no objective medical evidence of significant worsening of the claimant's impairments. In fact, the claimant has not undergone more than conservative treatment for her impairments during the relevant period, there is no history of mental health treatment aside from medication therapy, and the claimant remains independent in most activities of daily living. There is also no evidence in the record confirming the frequency and extent of claimant's alleged migraines, with minimal specialized treatment for such impairment. While the claimant is certainly limited to some degree, the record does not support that she is limited to the extent alleged.

The law judge's explanation states good cause for discounting Dr. Finnerty's opinion of disabling functional limitations. See Poellnitz v. Astrue, 349 Fed. Appx. 500, 502 (11th Cir. 2009) ("Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error.").

The plaintiff challenges the law judge's rejection of Dr. Finnerty's opinions of disabling limitations. She argues that the law judge

13

"did not explain why he believed that Plaintiff's testimony was inconsistent with the evidence and failed to back up his conclusory assertion with any citations to the treatment notes" (Doc. 15, p. 14). This is incorrect; throughout the decision the law judge identifies, with record citations, substantial medical and other evidence that is inconsistent with Dr. Finnerty's opinions of extreme limitations (Tr. 21–23; see supra, pp. 9–13). Accordingly, the plaintiff's citations to legal authority holding that "conclusory explanations are not sufficient to satisfy the Eleventh Circuit's 'particularity' requirement" (Doc. 15, p. 14) are inapposite.

The plaintiff also argues that the law judge erroneously "suggested that Plaintiff's pain could not have been severe because she received only conservative treatment for her symptoms" (id., pp. 15–16). In this respect, the plaintiff disputes that narcotics are a conservative measure (id., p 16). Medication is conservative, relative to surgery and other invasive forms of treatment. See Morales v. Commissioner of Social Security, 799 Fed. Appx. 672, 676–77 (11th Cir. 2020) (prescription medication was part of a conservative treatment plan); Pennington v. Commissioner of Social Security, 652 Fed. Appx. 862, 873 (11th Cir. 2016). Furthermore, it is self-evident that successful treatment—whether conservative or otherwise—may undermine claims of disabling limitations. See Dawkins v. Bowen, 848 F.2d

14

1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."). Here, the law judge could reasonably conclude from the medical records that the plaintiff's medication regimen was successful because it enabled her to function with few medication side effects.[3]

The plaintiff contends further that the law judge "erred by suggesting that Dr. Finnerty's opinion is inconsistent with Plaintiff's reported daily activities," and adds that her ability to engage in activities of daily living do not disqualify her from disability benefits (Doc. 15, pp. 16–17). In this respect, the Eleventh Circuit has stated:

> Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir.1997), that does not mean it is improper for the ALJ to consider a claimant's daily activities at all. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifically listing the claimant's daily activities as one of the factors to consider in evaluating the claimant's symptoms).

Majkut v. Commissioner of Social Security, 394 Fed. Appx. 660, 663 (11th

---

[3]The plaintiff also argues that the treatment notes show that Plaintiff's pain was 'suboptimally managed' by conservative treatment ..." (Doc. 15, pp. 15–16). This comment appeared in the "History of Present Illness" section of a treatment note from another doctor early in the alleged disability period (see Tr. 257). It is not reflective of the vast majority of Dr. Finnerty's treatment notes during the alleged disability period, which show that the plaintiff's medication regimen was successful.

Cir. 2010); see also Harwell v. Heckler, 735 F.2d 1292, 1293 (11th Cir. 1984) (The record shows that the ALJ properly considered a variety of factors, including the claimant's use of pain-killers and his daily activities, in making the finding about pain.).

Initially, the plaintiff's activities of daily living was just one of several factors considered by the law judge in determining the weight to give Dr. Finnerty's opinions. Furthermore, the law judge could reasonably conclude that Dr. Finnerty's opinions of extreme functional limitations are inconsistent with the plaintiff's ability to "function throughout the day and keep up with activities of daily living" (Tr. 330) (see supra, pp. 11–12).

Finally, the plaintiff contends that, "[e]ven if the ALJ had given a proper explanation, this decision would still need to be remanded because the medical evidence completely supports the functional limitations that Dr. Finnerty described" (Doc. 15, p. 15). This argument misapprehends the standard of review in Social Security cases, which is very deferential. Thus, it is not enough that the plaintiff can cite evidence that is consistent with, or supports disability; the evidence must compel that conclusion. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027 (findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to

16

justify a reversal of the administrative findings").  Furthermore, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).   Therefore, "[e]ven if ... the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The plaintiff has not identified evidence which compelled the law judge to accept Dr. Finnerty's opinion of extreme functional limitations. The plaintiff emphasizes the observations of a physical therapist that she "ambulate[s] with decreased speed and stride length"; had a reduced range of motion in her lumbar spine as well as positive straight-leg raising on her right side" (Doc. 15, p. 15; see Tr. 359).  The law judge acknowledged these findings (Tr. 22) but reasonably concluded that they do not support Dr. Finnerty's opined disabling limitations.   Furthermore, the record also contains evidence of normal or nearly normal findings upon examination of the plaintiff's lumbar spine and gait  (see, e.g., Tr. 260 (normal gait, reflexes normal; straight leg raising negative, sensory normal, normal strength); Tr. 356 (lumbosacral spine is essentially normal)).

The plaintiff also contends that Dr. Finnerty's treatment notes support the assertion that she would have multiple absences each month because her vomiting "episodes occur at least once per month ... and can debilitate Plaintiff for two or three days at a time" (Doc. 15, p. 15). As indicated, "support" is not the standard of review. Furthermore, this argument fails because this aspect of Dr. Finnerty's opinion was based solely on the plaintiff's subjective reports of her symptoms, which the law judge found were not fully credible (see Tr. 20) (discounting the credibility of the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms"). That credibility determination is supported by substantial evidence, and it is unchallenged (see Doc. 14). Consequently, the law judge was not required to accept the plaintiff's subjective reports of extreme symptoms in determining the weight to give Dr. Finnerty's opinion. See Majkut v. Commissioner of Social Security, supra, 394 Fed. Appx. at 664 (discounting the weight given to a treating physician in part because the opinion was based on the plaintiff's subjective complaints which the law judge found were not credible).

In sum, the law judge stated good cause for discounting Dr. Finnerty's opinion of debilitating functional limitations, and that determination is supported by substantial evidence. See Hargress v. Social

18

Security Administration, Commissioner, supra, 883 F.3d at 1306; Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) ("Substantial evidence is

more than a scintilla and is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion."). Therefore, this

argument fails.

## IV.

The plaintiff's second argument is that "there is an unresolved

conflict between the Vocational Expert's ... testimony and the Dictionary of

Occupational Titles" that requires reversal of the Commissioner's decision

(Doc. 15, p. 18). This contention raises the question whether a claimant who

is limited to simple, routine, repetitive tasks can perform jobs that the

Dictionary of Occupational Titles (DOT) states requires the ability to engage

in work that involves reasoning level 2.

This argument is premised upon Washington v. Commissioner

of Social Security, 906 F.3d 1353, 1356 (11th Cir. 2018), in which the

Eleventh Circuit held:

> [T]he ALJs within the SSA have an affirmative
> duty to identify apparent conflicts between the
> testimony of a Vocational Expert and the DOT and
> resolve them. This duty requires more of the ALJ
> than simply asking the VE whether his testimony
> is consistent with the DOT. Once the conflict has
> been identified, the Ruling requires the ALJ to

> offer a reasonable explanation for the discrepancy,
> and detail in his decision how he has resolved the
> conflict.

The law judge, based on the testimony of the vocational expert, found that the plaintiff could perform representative jobs such as small parts assembler, electronics worker, and a laundry folder (Tr. 25). The plaintiff argues that (Doc. 15, p. 18):

> all three of those jobs have a reasoning level of 2,
> which means that they require ... the ability to
> understand and carry out 'detailed but uninvolved'
> instructions .... So, a person who is limited to only
> 'simple' instructions would not be able to perform
> those jobs as they are described in the DOT.

Consequently, the plaintiff argues, "there was at least an apparent conflict between the VE's testimony and the DOT" (id., p. 19) which the law judge "failed to acknowledge ... during the hearing, and did not give any reasonable explanation for ... in the written decision" (id., p. 21). In support of this contention, the plaintiff cites to three district court cases holding that the law judge failed to reconcile an apparent conflict between a residual functional capacity for simple, routine, repetitive tasks and jobs with a reasoning level of 2, including one by me. See Salermo v. Saul, Case No. 8:18-cv-979-TGW, 2019 WL 4595157 (M.D. Fla.).

In Salermo, I discussed that courts have disagreed on whether "a claimant who is limited to simple, routine, repetitive tasks can perform jobs that the DOT states requires the ability to engage in work that involves reasoning level 2" (id. at *3). I concluded that, due to this uncertainty, there was "an 'apparent' conflict—as that term is defined in Washington—between the limitation to simple, routine, repetitive tasks and the vocational expert's identification of jobs that the DOT states requires a reasoning level 2" (id. at *4). However, recent Eleventh Circuit authority indicates there is no such conflict and, therefore, there is no basis for remand of this case under Washington.

Thus, the Commissioner, citing to Valdez v. Commissioner of Social Security, 808 Fed. Appx. 1005 (11th Cir., April 23, 2020), argues that a reasoning level of 2 is not inconsistent with a limitation to simple, routine, and repetitive work (Doc. 17). The plaintiff disagrees (see Doc. 18).

In Valdez, the plaintiff argued that the law judge's finding that he could perform the job of an order clerk, which has a reasoning level of 3, conflicts with the law judge's finding that he is limited to simple, routine, and repetitive tasks. 808 Fed. Appx. at 1008–1009. The Eleventh Circuit stated (id. at 1009, emphasis added):

21

We haven't decided the issue *Valdez* raises here---whether a limitation to simple, routine and repetitive work is inconsistent with a job that requires a reasoning level of three. But it is unnecessary to decide it because, even if Valdez was not able to work as an order clerk, the ALJ still concluded that he could perform two other jobs: lens inserter, which has a reasoning level of one ... and lens-block gauger, <u>which has a reasoning level of two</u>.... Valdez has not argued that these jobs are inconsistent with his residual functional capacity, <u>and they are not</u>.

Furthermore, three judges in this district have held, based on <u>Valdez</u>, that a job with a reasoning level of two does not conflict with a limitation to simple, routine, repetitive tasks. Chief United States District Judge Steven D. Merryday elaborated in <u>Fletcher</u> v. <u>Saul</u>, Case No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210 (M.D. Fla.):

Fletcher argues that an apparent conflict exists because, if Fletcher can perform a "simple" task only, Fletcher presumably cannot follow a "detailed but uninvolved" instruction.

But *Valdez* v. *Commissioner of Social Security*, 808 F. App'x 1005, 1009 (11th Cir. 2020), determines that no apparent conflict exists between a limitation to a "simple" task and a finding that the petitioner can perform a job with a reasoning level of 2. Attempting to avoid *Valdez*, Fletcher argues that this determination in *Valdez* constitutes dicta because the petitioner in *Valdez* argued that an apparent conflict exists between the limitation to a "simple" task and the finding that the petitioner could perform a job with a reasoning

22

level of 3 — not a job with a reasoning level of 2.
Fletcher's argument fails, however, because
*Valdez* (1) found "unnecessary to decide" the
petitioner's apparent-conflict argument about a
reasoning level of 3 because the ALJ concluded
that the petitioner could perform a job with a
reasoning level of 2 and (2) held that no apparent
conflict exists between a reasoning level of 2 and
a limitation to a "simple" task. *Valdez*, 80[8] F.
App'x at 1019 ("*Valdez* has not argued that these
jobs [of reasoning level 2] are inconsistent with his
residual functional capacity, and they are not.")
Accordingly, *Valdez's* resolution of the logically
preceding issue — whether an apparent conflict
exists between a limitation to a "simple" task and
a reasoning level of 2 — constitutes the holding.

Additionally, in <u>Langer o/b/o Langer</u> v. <u>Commissioner of</u>

<u>Social Security</u>, Case No. 8:19-cv-1273-T-24PDB, 2020 WL 5106680 (M.D

Fla.), United States District Judge Susan C. Bucklew adopted the report and

recommendation of United States Magistrate Judge Patricia D. Barksdale, in

which Judge Barksdale remarked that "the Eleventh Circuit has observed a

limitation to simple tasks is not inconsistent with, and does not create a

discrepancy showing an apparent conflict with, reasoning level two." 2020

WL 5124957 at *14. Judge Barksdale elaborated (<u>id</u>.):

Before *Washington*, the Eleventh Circuit observed
reasoning levels of two or three may be jobs with
simple tasks. *See, e.g., Chambers* v. *Comm'r of
Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016).
After *Washington*, the Eleventh Circuit, in an
unpublished opinion, held that an RFC of "simple,

23

routine, and repetitive tasks" is not inconsistent with a job with a reasoning level of two. *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (citing the ALJ's duty under *Washington* to affirmatively identify and resolve apparent conflicts between the VE's testimony and DOT but not using the "apparent conflict" language in its holding, instead saying the two were "not inconsistent").

Furthermore, the Commissioner points out that the Fourth Circuit Court of Appeals has recently held that there is no conflict between a limitation to simple, routine, repetitive tasks of unskilled work and jobs requiring reasoning level two. <u>Lawrence</u> v. <u>Saul</u>, 941 F.3d 140, 144 n.8 (4th Cir. 2019) ("[W]e join every other circuit to consider the issue."). The Fourth Circuit's decision is not binding, but it certainly is persuasive.

In <u>Salermo</u>, I expressed my hope for clarification in this area. The Eleventh Circuit's decision in <u>Valdez</u>, as construed by Chief Judge Merryday, provided sufficient clarification to permit the conclusion that there is no conflict between a limitation to simple, routine, repetitive tasks and jobs that require reasoning level 2.

Consequently, the plaintiff has not identified an apparent conflict under <u>Washington</u> requiring remand of this matter. <u>See</u> <u>Webster</u> v. <u>Commissioner of Social Security</u>, 773 Fed. Appx. 553, 555–56 (11th Cir. 2019), <u>citing</u> <u>Washington</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 906

F.3d at 1365 ("[T]o the extent that [the plaintiff] argues that the ALJ was required to independently verify a VE's testimony, we have held that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT."). Accordingly, the plaintiff's second contention also fails.

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 25ᵗʰ day of September, 2020.

Thomas G. Wilson

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE